UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     vs.<br><br>DONNA YUK LAN LEONG (01), MAX JOHN SWORD (02), ROY KEIJI AMEMIYA JR. (03),<br><br>                Defendant. | CR. NO. 21-00142 LEK |

**ORDER GRANTING CIVIL BEAT LAW CENTER FOR THE
PUBLIC INTEREST'S RENEWED MOTION TO UNSEAL COURT RECORDS**

Before the Court is Civil Beat Law Center for the Public Interest's ("Civil Beat") Renewed Motion to Unseal Court Records ("Renewed Motion"), filed on October 10, 2023. [Dkt. no. 337.] The City and County of Honolulu ("the City") filed a letter brief in response to the Renewed Motion ("City Response") on October 23, 2023. [Dkt. no. 341.] On October 31, 2023, Defendants Donna Yuk Lan Leong ("Leong"), Roy Keiji Amemiya, Jr. ("Amemiya"), and Max John Sword ("Sword" and collectively "Defendants") and Plaintiff United States of America ("the Government") filed their respective responses to the Renewed Motion ("Defendants' Response" and "the Government's Response"). [Dkt. nos. 344, 345.] Civil Beat filed its reply in support of the Renewed Motion on November 7, 2023. [Dkt. no. 347.] This matter came on for hearing on November 21, 2023. Civil Beat's

Renewed Motion is hereby granted for the reasons set forth below.

**BACKGROUND**

## I.   **The Underlying Cases**

On January 19, 2017, the Government filed, under seal, In re Applicability of Attorney-Client Privilege & Crime-Fraud Exception to Certain Audio Recordings, MJ 17-00075 KJM ("MJ 17-075"). See generally MJ 17-075 docket sheet. During a January 19, 2017 status conference and hearing, United States Magistrate Judge Kenneth J. Mansfield denied the Government's ex parte motion seeking the application of the crime-fraud exception. See MJ 17-075, Minutes, filed 1/19/17 (dkt. no. 4). The Government filed a motion for reconsideration on February 6, 2017, and Judge Mansfield denied the motion on February 22, 2017. See generally MJ 17-075 docket sheet.

On March 7, 2017, the Government filed an ex parte appeal and request for reconsideration of Judge Mansfield's ruling in MJ 17-075. See generally In re Applicability of Attorney-Client Privilege & Crime-Fraud Exception to Certain Audio Recordings, CV 17-00107 DKW-KJM ("CV 17-107"), docket sheet. The Government subsequently withdrew its original appeal so that it could refile the appeal in two steps. See CV 17-107, Minutes, filed 4/21/17 (dkt. no. 8). The two-step appeal

followed the process outlined in United States v. Zolin, 491
U.S. 554 (1989).

The Government filed the first step of its amended
appeal on May 3, 2017 ("Zolin Step 1 Brief"), and on June 14,
2017, United States District Judge Derrick K. Watson issued an
order reversing Judge Mansfield's February 22, 2017 order in
part. The Government filed its second step brief on July 11,
2017 ("Zolin Step 2 Brief"), and Judge Watson issued an order
reversing Judge Mansfield's February 22, 2017 order on August 4,
2017. See generally, CV 17-107 docket sheet. Judge Watson's
August 4, 2017 order is referred to as "the Crime-Fraud Order."

On December 11, 2017, Judge Watson issued an entering
order allowing Federal Bureau of Investigation ("FBI") agents
and Assistant United States Attorneys ("AUSAs") to show the
Government's proposed redacted copy of the Crime-Fraud Order "to
witnesses and/or their attorneys for the purpose of interviewing
such witnesses in the government's ongoing investigation."
[CV 17-107, EO, filed 12/11/17 (dkt. no. 27).] Except for that
limited purpose, the Crime-Fraud Order remained sealed. [Id.]

On January 2, 2019, the Government filed, under seal,
an application and affidavit for a search warrant. Judge
Mansfield issued the warrant, and it was returned, reflecting
execution on January 3, 2019. See generally In re the Search of

3

Computer Servers Maintained by the City & Cnty. of Honolulu, MJ 19-00001 KJM ("MJ 19-001"), docket sheet.

The City and County of Honolulu ("the City") filed proceedings to prevent the Government from searching emails seized pursuant to the warrant obtained in MJ 19-001. See City & Cnty. of Honolulu v. United States, CV 19-00026 JMS-RT ("CV 19-026"), Application to File *Ex Parte* Motion for Temporary Restraining Order Under Seal, filed 1/18/19 (dkt. no. 1). However, the substantive proceedings in CV 19-026 are not relevant to the issues in Civil Beat's Renewed Motion.

## II.  Proceedings in the Instant Case

On December 16, 2021, the Government filed the initial one-count Indictment against Defendants. [Dkt. no. 1.] They were charged with conspiracy, in violation of Title 18 United States Code Sections 371, 666(a)(1)(A), and 1343.

The events underlying the criminal prosecution in this matter arise from the employment separation of former Honolulu Police Department ("HPD") Chief of Police Louis Kealoha ("Kealoha") from HPD. Specifically, the Government alleges: that Kealoha (who, when the separation agreement was reached, had been the target of a federal criminal investigation and, as a result, had been placed on administrative leave as the chief of police) agreed to retire from HPD in exchange for a payment in the amount of $250,000; and that the Honolulu Police Commission

4

("Police Commission") approved this payment in return for Kealoha's retirement, and for his waiver and release of any legal claims stemming from employment with or retirement from HPD. See Indictment **_First Superseding_** ("Superseding Indictment"), filed 3/17/22 (dkt. no. 79), at ¶¶ 16-18. Kealoha was subsequently indicted and convicted in United States v. Louis M. Kealoha, Cr. No. 17-00582(02) JMS-WRP, and United States v. Louis M. Kealoha, Cr. No. 18-00068(02) JMS-WRP. At the time that the agreement was reached with Kealoha, Leong was the Corporation Counsel for the City, Sword was the Chairperson of the Police Commission, and Amemiya was the City's Managing Director. [Superseding Indictment at ¶¶ 1-3.] It is undisputed that the recordings that were the subject of MJ 17-075 and the redacted Crime-Fraud Order were used in the investigation that led to the charges in the instant case.

On October 21, 2022, this Court granted the 9/1/22 Civil Beat Motion in part and ordered that the docket sheets for MJ 17-075, CV 17-107, and MJ 19-001 be unsealed. [Minute Order – EO: Court Order Granting in Part Civil Beat Law Center for the

Civil Beat filed its original Motion to Unseal Court Records on September 1, 2022 ("9/1/22 Civil Beat Motion"). [Dkt. no. 163.] The City has consistently asserted that various filings, or portions of filings, in MJ 17-075, CV 17-107, and MJ 19-001 are protected by the City's attorney-client privilege.

On October 21, 2022, this Court granted the 9/1/22 Civil Beat Motion in part and ordered that the docket sheets for MJ 17-075, CV 17-107, and MJ 19-001 be unsealed. [Minute Order – EO: Court Order Granting in Part Civil Beat Law Center for the

Public Interest's Motion to Unseal Court Records, filed 10/21/22
(dkt. no. 183) ("10/21/22 EO"), at PageID.1740.] This Court
further granted the 9/1/22 Civil Beat Motion and unsealed the
following documents:

    -MJ 17-075, docket numbers 1, 4, 5, 8, and 10; and

    -CV 17-107, docket numbers, 3, 4, 8, 9, 10, 11, 12-2 to

        12-37, 14, 15, 16, 17, 23, 24, 30, 31, 32, 33, 34, 35,

        and 36;

[Minute Order – EO: Further Court Order on Civil Beat Law Center
for the Public Interest's Motion to Unseal Court Records, filed
2/8/23 (dkt. no. 193) ("2/8/23 EO"), at PageID.1811-12.] This
Court also unsealed MJ 19-001, docket number 2. [Minute Order –
EO: Court Order Regarding the City and County of Honolulu's
Letter Dated February 14, 2023, [Filed 2/16/23 (Dkt. No. 193)]
[sic], filed 2/17/23 (dkt. no. 197) ("2/17/23 EO"), at
PageID.1848.]

      The remaining portions of the Civil Beat 9/1/22 Motion
were deemed withdrawn because this Court elected to defer ruling
on them, pending the resolution of Defendants' motions to
dismiss the charges against them. See Minute Order – EO: Court
Order Granting Defendants' Joint Unopposed Request to Defer
Ruling on Civil Beat Law Center for the Public Interest's Motion
to Unseal Court Records (Dkt. No. 163), [Filed 4/25/23 (Dkt.
No. 245)], filed 4/26/23 (dkt. no. 246). Civil Beat filed the

Renewed Motion after the last of Defendants' motions to dismiss were denied. Civil Beat argues all of the remaining documents in MJ 17-075, CV 17-107, and MJ 19-001 should be unsealed, except for the privacy redactions that this Court permitted in the 2/8/23 EO.

## DISCUSSION

## I.   <u>Scope of the Instant Order</u>

At the outset, this Court acknowledges that the privilege issues that are addressed in the Civil Beat's Renewed Motion are the same as, or similar to, issues that must be addressed regarding the unsealing of court filings in other cases and regarding the presentation of evidence at the trial in this case. However, this Court emphasizes that the scope of the instant Order is limited to the cases identified in Civil Beat's Renewed Motion – MJ 17-075, CV 17-107, and MJ 19-001. The parties are encouraged to meet and confer regarding the application of the analysis in the instant Order to any sealed filings in other related cases and to any documents that are intended to be introduced as exhibits at trial.

One of the arguments that Civil Beat raises in the Renewed Motion is that the City has waived any attorney-client privilege protection of the documents that the Government submitted as exhibits to the <u>Zolin</u> Step 1 Brief. <u>See</u> Renewed Motion at 2-3 (citing prior filings addressing the issue of

waiver); see also 2/8/23 EO at PageID.1811-12 (ordering unsealed CV 17-107, docket numbers 12-2 to 12-37). The City argues this Court should not find that there was a waiver because the failure to assert the attorney-client privilege over the exhibits to the Zolin Step 1 Brief was inadvertent. See City Letter (dated 4/19/23), filed 4/20/23 (dkt. no. 239) ("City 4/20/23 Letter"), at 22-23; City 4/20/23 Letter, Decl. of Aviva J.B. Gilbert at ¶¶ 7-11.

Civil Beat's waiver argument is well-taken. However, this Court declines to rule on the merits of the waiver argument and will instead apply the same analysis to the Zolin Step 1 Brief exhibits that this Court applies to all of the other documents for which the City asserts the attorney-client privilege. That is, this Court will determine, as to each exhibit that privilege is asserted, whether the attorney-client privilege applies and, if so, whether the crime-fraud exception applies.

## II.  **Standards**

### A.   **Attorney-Client Privilege**

The City has filed a privilege log identifying the portions of the documents in MJ 17-075, CV 17-107, and MJ 19-001 that the City asserts are protected by its attorney-client privilege, and the City agrees that the remaining documents are not privileged and should be unsealed. See City Letter (dated

2/21/23), filed 2/22/23 (dkt. no. 198) ("City 2/22/23 Letter"),
at 1; see also id. at PageID.1852-65 (City and County of
Honolulu Privilege Log per Docket 193) ("City Privilege Log").

In a federal criminal prosecution, federal common law
governs the determination of whether the attorney-client
privilege applies. See Zolin, 491 U.S. at 562 ("Questions of
privilege that arise in the course of the adjudication of
federal rights are 'governed by the principles of the common law
as they may be interpreted by the courts of the United States in
the light of reason and experience.'" (quoting Fed. Rule
Evid. 501)). The Ninth Circuit has stated that

> "[a] party asserting the attorney-client
> privilege has the burden of establishing the
> relationship **and** the privileged nature of the
> communication." [United States v.] Bauer, 132
> F.3d [504,] 507 [(9th Cir. 1997)] (citing Ralls
> v. United States, 52 F.3d 223, 225 (9th Cir.
> 1995)) (emphasis added); accord In re Grand Jury
> Subpoenas, 144 F.3d 653, 659 (10th Cir. 1998)
> ("In certain circumstances, reasonable belief may
> be enough to create an attorney-client
> relationship, but it is not sufficient here to
> create a personal attorney-client
> privilege."). . . .
>
> "The attorney-client privilege protects
> confidential disclosures made by a client to an
> attorney in order to obtain legal advice, . . .
> as well as an attorney's advice in response to
> such disclosures." Bauer, 132 F.3d at 507
> (quoting United States v. Chen, 99 F.3d 1495,
> 1501 (9th Cir. 1996)) (emphasis omitted). "The
> fact that a person is a lawyer does not make all
> communications with that person privileged."
> United States v. Martin, 278 F.3d 988, 999 (9th
> Cir. 2002) (citing Chen, 99 F.3d at 1501).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." Id. (quoting Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)); accord United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990). "[T]he privilege stands in derogation of the public's 'right to every man's evidence' and as 'an obstacle to the investigation of the truth,' [and] thus, . . . '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (citations omitted). Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

> In re Grand Jury Investigation, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting United States v. Margolis (In re Fischel), 557 F.2d 209, 211 (9th Cir. 1977)). The party asserting the privilege bears the burden of proving each essential element. United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000).[1]

United States v. Ruehle, 583 F.3d 600, 607-08 (9th Cir. 2009)

(some alterations in Ruehle) (footnote omitted).

---

[1] Munoz has been superseded by statute on other grounds. See, e.g., United States v. Lloyd, 807 F.3d 1128, 1165 (9th Cir. 2015).

B.   **Crime-Fraud Exception**

The crime-fraud exception to the attorney-client privilege is a "generally recognized exception to that privilege for communications in furtherance of future illegal conduct." Zolin, 491 U.S. at 556.

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection — the centrality of open client and attorney communication to the proper functioning of our adversary system of justice — "ceas[es] to operate at a certain point, namely, where the desired advice refers **not to prior wrongdoing**, but to **future wrongdoing**." 8 Wigmore, § 2298, p. 573 (emphasis in original); see also Clark v. United States, 289 U.S. 1, 15 (1933). It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," ibid., between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime. O'Rourke v. Darbishire, [1920] A.C. 581, 604 (P.C.).

Id. at 562-63 (brackets and emphasis in Zolin).

C.   **Two-Step *Zolin* Analysis**

Zolin addressed the situation where the party opposing the assertion of the attorney-client privilege asks a district court to conduct an *in camera* review of the allegedly privileged communications to determine whether the crime-fraud exception applies. See id. at 564. The procedural posture of the Renewed Motion is different from the procedural posture of Zolin, but this Court concludes that a modified version of the Zolin two-

11

step analysis is appropriate to analyze the issues presented by the Renewed Motion.

In the first step of the Zolin analysis, the district court usually determines whether there is "a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." See id. at 572 (internal quotation marks and citation omitted). The party seeking the *in camera* review must make this showing by "us[ing] any nonprivileged evidence in support of its request for *in camera* review." See id. at 574. The Zolin step 1 "standard is less stringent than that ultimately required to overcome the privilege." Mauna Kea Resort, LLC v. Affiliated FM Ins. Co., CIVIL NO. 07-00605 DAE-KSC, 2009 WL 10677218, at *2 (D. Hawai`i Sept. 3, 2009) (citing Zolin, 491 U.S. at 572).

If step one of the Zolin analysis is satisfied and an *in camera* review is conducted,[2] at step two of the analysis,

_____

[2] When step one of the Zolin analysis is satisfied,

> the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence
> (. . . continued)

the party seeking to vitiate the attorney-client privilege under the crime-fraud exception "must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of [the] intended, or present, continuing illegality." In re Napster[, Inc. Copyright Litig.], 479 F.3d [1078,] 1090 [(9th Cir. 2007)] (internal quotation marks, emphasis and citation omitted).[3]

In a civil case in the Ninth Circuit, "the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime fraud exception should be preponderance of the evidence." In re Napster, 479 F.3d at 1094-95. "[J]udicious use of in camera review, combined with a preponderance burden for terminating privilege, strikes a better balance between the importance of the attorney-client privilege and deterrence of its abuse than a low threshold for outright disclosure." Id. at 1096. "Where the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show . . . that the litigation or an aspect thereof had little or no

---

produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. The district court is also free to defer its in camera review if it concludes that additional evidence in support of the crime-fraud exception may be available that is **not** allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings.

Zolin, 491 U.S. at 572 (emphasis in original). This portion of the Zolin analysis is inapplicable to this Court's analysis for the Renewed Motion.

  [3] Napster was abrogated on other grounds by Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100 (2009). See, e.g., Trendsettah USA, Inc. v. Swisher Int'l, Inc., 31 F.4th 1124, 1134 (9th Cir.), cert. denied, 143 S. Ct. 486 (2022).

> legal or factual basis and was carried out
> substantially for the purpose of furthering the
> crime or fraud." In re Richard Roe, Inc., 168
> F.3d 69, 71 (2d Cir. 1999).

Nat.-Immunogenics Corp. v. Newport Trial Grp., Case No: 15 CV-02034-JVS (JCGx), 2020 WL 8816475, at *2 (C.D. Cal. May 15, 2020) (some alterations in Nat.-Immunogenics). This Court has conducted a modified version of the Zolin Step 1 analysis, insofar as it has reviewed all of the sealed documents at issue in the Renewed Motion. As to any document that is protected by the attorney-client privilege, this Court will determine whether the crime-fraud exception applies.

## III.   **Filings at Issue in the Renewed Motion**

### A.   **MJ 17-075**

The only documents that are still sealed in MJ 17-075 are docket numbers 2, 6, 7, and 9. The City is no longer asserting the attorney-client privilege as to docket number 9, which is Judge Mansfield's February 22, 2017 Order Denying Government's Motion for Reconsideration of Oral Ruling Denying Ex Parte Motion for Determination of Applicability of Attorney-Client Privilege and Crime-Fraud Exception to Certain Audio Recordings. See City 2/22/23 Letter at PageID.1858 (City Privilege Log at 7). MJ 17-075, docket number 9 shall therefore be unsealed.

1.  **Docket Number 2**

Docket number 2 is the Government's January 19, 2017 Ex Parte Motion for Determination of Applicability of Attorney-Client Privilege and Crime-Fraud Exception to Certain Audio Recordings ("MJ 17-075 Ex Parte Motion"). The filing consists of: a two-page motion; [MJ 17-075, dkt. no. 2;] a memorandum in support; [id., dkt. no. 2-1;] a declaration by Assistant United States Attorney Rachel S. Moriyama ("Moriyama Declaration"); [id., dkt. no. 2-2;] and four exhibits, each of which is an FBI transcription of a conversation between various City personnel that was recorded by Acting Chief of Police Cary Okimoto ("Okimoto") without the knowledge of the other persons involved in the conversations, [id., dkt. nos. 2-3 to 2-6]. The City does not assert attorney-client privilege as to the two-page motion, the Moriyama Declaration, nor Exhibit 2.[4] See City 2/22/23 Letter at PageID.1852 (City Privilege Log at 1). Docket numbers 2, 2-2,

---

[4] Exhibit 2 is the FBI transcription, completed on January 17, 2017, of a conversation between Sword, Okimoto, HPD Deputy Chief Jerry Inouye ("Inouye"), and Lynne Uyema ("Uyema"). At the hearing on the Renewed Motion, the City's counsel represented that Uyema is an HPD employee who is an attorney, but that her position with HPD is not in a capacity as an attorney. [Transcript of Proceedings – 11/21 hearing, filed 11/24/23 (dkt. no. 353) ("Renewed Motion Hrg. Trans."), at 5-6.] Thus, even if the City were asserting attorney-client privilege as to Exhibit 2, this Court would conclude that the privilege does not apply because no "professional legal adviser in his capacity as such" was consulted for advice during the conversation that is transcribed in Exhibit 2. See In re Grand Jury Investigation, 974 F.2d at 1071 n.2.

and 2-4 within the MJ 17-075 Ex Parte Motion shall therefore be
unsealed.

Exhibit 1 to the MJ 17-075 Ex Parte Motion is the FBI
transcription, completed on January 17, 2017, of a conversation
between Leong and Okimoto. Exhibit 3 is the FBI transcription,
completed on January 17, 2017, of a conversation between Leong,
Okimoto, Sword, and Nelson Koyanagi ("Koyanagi"), who was the
Director of the City's Department of Budget and Fiscal Services
("BFS") during the relevant period. Exhibit 4 is the FBI
transcription, completed on January 18, 2017, of a conversation
between Okimoto and Deputy Corporation Counsel Duane Pang
("Pang"). During these conversations, Okimoto, Sword, and
Koyanagi, who were all City officials, consulted with Leong or
Pang, attorneys who were employed to serve as attorneys for the
City. Other than Okimoto, who was recording the conversation,
the participants believed that the communication they were
participating in was confidential.

A city employee can be a client for purposes of the
attorney-client privilege. See Mendoza v. Gates, 19 F. App'x
514, 519-20 (9th Cir. 2001) (citing United States v. Chen, 99
F.3d 1495, 1502 (9th Cir. 1996) ("The attorney-client privilege
applies to communications between corporate employees and
counsel, made at the direction of corporate superiors in order
to secure legal advice.")). Thus, Okimoto, Sword, and Koyanagi

16

were clients for purposes of the attorney-client privilege because they participated in the communications and secured legal advice in their capacities as City officials.

Although Okimoto was a client for purposes of participating in communications protected by the attorney-client privilege, he did not have authority to waive the privilege on the City's behalf.

> An agent acting within the scope of her authority can waive a corporation's privilege. See Interfaith Housing Delaware, Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1399 (D. Del. 1994); see also Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."). Thus, a corporation's president can make statements waiving the corporation's attorney-client privilege, as a mayor can for a city. See Interfaith Housing, 841 F. Supp. at 1399. . . .

Young v. City & Cnty. of Honolulu, Civil No. 07-00068 JMS-LEK, 2008 WL 2676365, at *7 (D. Hawai`i July 8, 2008) (some alterations in Young). Although Okimoto was HPD's Acting Chief of Police there is no evidence that the position had the authority to waive the City's attorney-client privilege. Thus, Okimoto's surreptitious recording of the conversations and disclosure of the recordings to the FBI did not waive the City's attorney-client privilege as to those conversations. There is no other evidence suggesting that the City has waived the attorney-

client privilege as to those conversations. This Court therefore concludes that that the conversations that are transcribed in Exhibits 1, 3, and 4 to the MJ 17-075 Ex Parte Motion are protected by the City's attorney-client privilege.

As to the memorandum in support, docket number 2-1, the City has asserted attorney-client privilege as to several passages discussing the content of the protected communications transcribed in the exhibits. See City 2/22/23 Letter at PageID.1852 (City Privilege Log at 1).[5] This Court agrees with the City that the passages of the memorandum in support that are noted in the City Privilege Log discuss material that is protected by the City's attorney-client privilege. However, the portions of the memorandum in support of the MJ 17-075 Ex Parte Motion that are noted in the City Privilege Log must be unsealed.

### 2.   **Docket Number 6**

Docket number 6 is the transcript of Judge Mansfield's January 19, 2017 status conference regarding the MJ 17-075 Ex Parte Motion ("MJ 17-075 Transcript"). The City has identified several passages that it argues are protected by the attorney-

---

[5] One of the passages listed is page 2, lines 15-16 of the memorandum in support. See City 2/22/23 Letter at PageID.1852 (City Privilege Log at 1). However, based on the description of the communication and the basis for the assertion of privilege, the citation appears to be a mistake. The Court assumes the City was referring to page 3, lines 5-7 of the memorandum in support.

client privilege because the AUSAs arguing the motion and Judge Mansfield discuss the content of the communications that are transcribed in Exhibits 1, 3, and 4 to the MJ 17-075 Ex Parte Motion. See id. at PageID.1852-54 (City Privilege Log at 1-3). This Court agrees that the passages of the MJ 17-075 Transcript that are noted in the City Privilege Log discuss material that is protected by the City's attorney-client privilege. Except for the passages noted in the City Privilege Log, the MJ 17-075 Transcript, docket number 6, must be unsealed.

### 3.   Docket Number 7

Docket number 7 is the Government's February 3, 2017 motion for reconsideration of the oral ruling that Judge Mansfield made at the status conference ("MJ 17-075 Motion for Reconsideration"). The filing consists of: a two-page motion; [MJ 17-075, dkt. no. 7;] a memorandum in support; [id., dkt. no. 7-1;] a declaration by Assistant United States Attorney Rachel S. Moriyama ("Second Moriyama Declaration"); [id., dkt. no. 7-2;] Exhibits A to D, the four FBI transcriptions attached to the MJ 17-075 Ex Parte Motion; [id., dkt. nos. 7-3 to 7-6;] Exhibit E, the MJ 17-075 Transcript; [id., dkt. no. 7-7;] Exhibits F and G, January 2017 letters between Sword and Ron Menor, Chair and Presiding Officer of the Honolulu City Council; [id., dkt. nos. 7-8 and 7-9;] Exhibit H, the January 2017 letter agreement between Kealoha and Sword, on behalf of the Police

19

Commission, regarding Kealoha's separation ("Kealoha Agreement"); [id., dkt. no. 7-10;] and Exhibit I, a January 19, 2017 Message from Okimoto "To the Men and Women of HPD," [id., dkt. no. 7-11]. The City does not assert attorney-client privilege as to the two-page motion, Exhibit B, nor Exhibits F to I.[6] See City 2/22/23 Letter at PageID.1854-58 (City Privilege Log at 3-7). Docket numbers 7, 7-4, and 7-8 to 7-11 within the MJ 17-075 Motion for Reconsideration must be unsealed.

Exhibits A, C, and D are Exhibits 1, 3, and 4 to the MJ 17-075 Ex Parte Motion, and therefore they are also protected by the attorney-client privilege. See *supra* Discussion § III.A.1. As to Exhibit E, the City seeks the redaction of the same passages in the MJ 17-075 Transcript that this Court has already approved. See City 2/22/23 Letter at PageID.1856-58 (City Privilege Log at 5-7); *supra* Discussion § III.A.1. Those passages in Exhibit E to the MJ 17-075 Motion for Reconsideration are also protected by the attorney-client privilege.

---

[6] The Court also notes that the Kealoha Agreement has already been publicly filed in this case. See Minute Order, filed 7/15/22 (dkt. no. 131), at PageID.722 (ruling that no compelling reason was shown to file the agreement under seal); Defendant Roy Keiji Amemiya, Jr.'s Substantive Joinder to Defendant Leong's Motion for a Bill of Particulars (Dkt. No. 120) [redacted], filed 10/12/22 (dkt. no. 180), Decl. of Lyle S. Hosoda, Exh. 2, Exh. E (Kealoha Agreement).

As to the memorandum in support, docket number 7-1, the City has asserted attorney-client privilege as to several passages discussing the content of the protected communications transcribed in Exhibits A, C, and D, as well as one other occasion. See City 2/22/23 Letter at PageID.1854-55 (City Privilege Log at 3-4). Page 3, line 6 through page 4, line 9 of the memorandum in support discusses the content of the conversation transcribed in Exhibit A – *i.e.*, Exhibit 1 to the MJ 17-075 Ex Parte Motion – and is therefore protected by the City's attorney-client privilege. See City 2/22/23 Letter at PageID.1854 (City Privilege Log at 3).[7] Page 6, line 22 through page 8, line 18 and page 8, line 24 through page 9, line 17 discuss, respectively, Exhibits C and D – *i.e.*, Exhibits 3 and 4 to the MJ 17-075 Ex Parte Motion. Further, page 28, lines 13 to 16 discuss Exhibits A, C, and D. See City 2/22/23 Letter at PageID.1855 (City Privilege Log at 4). Those passages of the memorandum in support of the MJ 17-075 Motion for Reconsideration are protected by the City's attorney-client privilege. Page 11, lines 10 to 19 discuss: a January 11, 2017

---

[7] The City Privilege Log lists page 3, line 6 to page 4, line 13 of the memorandum in support. See City 2/22/23 Letter at PageID.1854 (City Privilege Log at 3). However, page 4, line 10 only contains a citation, and lines 11 to 13 discuss the conversation that is transcribed in Exhibit B – *i.e.*, Exh. 2 to the MJ 17-075 Ex Parte Motion – which the City is not asserting protection by the attorney-client privilege.

meeting involving Leong, Pang, Okimoto, HPD Acting Deputy Chief William Axt ("Axt"), Inouye, and Uyema; and a conversation – which was overheard by Inouye - that Pang and Axt had in the hallway while Leong spoke to only Okimoto. This Court finds that the requirements for the attorney-client privilege are met as to both the meeting and the hallway conversation between Pang and Axt.

This Court agrees that the passages of the memorandum in support that are noted in the City Privilege Log – with the exception identified in footnote 6 - discuss material that is protected by the City's attorney-client privilege. Except for the passages identified in this Order, the memorandum in support of the MJ 17-075 Motion for Reconsideration must be unsealed.

Finally, as to the Second Moriyama Declaration, docket number 7-2, the City has asserted attorney-client privilege as to one passage discussing the January 11, 2017 meeting and hallway conversation discussed *supra*. See City 2/22/23 Letter at PageID.1855 (City Privilege Log at 4). As with the passage in the memorandum in support, the passage in the Second Moriyama Declaration discusses material that is protected by the City's attorney-client privilege. Except for that passage noted in the City Privilege Log, the Second Moriyama Declaration must be unsealed.

**B.   <u>MJ 19-001</u>**

MJ 19-001, docket number 3 is the Return for the executed search warrant. At the hearing on the Renewed Motion, the City's counsel agreed that there is no longer a basis to seal the Return. <u>See</u> Renewed Motion Hrg. Trans. at 5-6. Docket number 3 must therefore be unsealed.

MJ 19-001, docket number 1, the Application for a Search Warrant ("Search Warrant Application"), includes the following: a one-page application form; [MJ 19-001, dkt. no. 1 at PageID.1;] an Affidavit in Support of an Application for a Search Warrant ("Affidavit"); [<u>id.</u> at PageID.2-40;] Attachment A – Property to Be Searched; [<u>id.</u> at PageID.41;] Attachment B – Particular Things to be Seized; [<u>id.</u> at PageID.42-46;] and the Search and Seizure Warrant, [MJ 19-001, dkt. no. 1-1]. The City's counsel confirmed that, other that passages identified in the City Privilege Log, the City is not claiming any privilege as to the Search Warrant Application. <u>See</u> Renewed Motion Hrg. Trans. at 6-7. The City Privilege Log lists several passages from the Affidavit, but does not list any passages from the other portions of the Search Warrant Application. <u>See</u> City 2/22/23 Letter at PageID.1855 (City Privilege Log at 4). Because the City does not assert any privilege over the remaining portions of the Search Warrant Application, the Search Warrant

23

Application, docket number 1-1; docket number 1, PageID.1; and docket number 1, PageID.41 to PageID.46 must be unsealed.

As to the Affidavit, the City first asserts attorney-client privilege over page 5, lines 15 to 17. See City 2/22/23 Letter at PageID.1858 (City Privilege Log at 7). The passage discusses the January 11, 2017 hallway conversation between Axt and Pang, which this Court has concluded is protected by the attorney-client privilege. See *supra* Discussion § III.A.3.

Page 6, lines 4 to 15, and page 8, line 7 to page 9, line 15 discuss the conversations that are transcribed in Exhibits 1 and 3, respectively, to the MJ 17-075 Ex Parte Motion. Therefore, those pages of the Affidavit are also protected by the City's attorney-client privilege. Similarly, page 24, lines 14 to 17 discuss the conversation that is transcribed in Exhibit 3, and that passage is also protected by the City's attorney-client privilege.

The City argues the passage from page 22, line 1 through page 23, line 6 is protected because it discusses the conversation that is transcribed in Exhibit 4 to the MJ 17-075 Ex Parte Motion. See City 2/22/23 Letter at PageID.1858 (City Privilege Log at 7); see also MJ 19-001, Search Warrant

Application at PageID.23 (Affidavit at 22-23), ¶¶ 46.c-e.[8]
Page 22, lines 8 to 18 discusses the substance of that
conversation, and that passage is therefore protected by the
City's attorney-client privilege. See MJ 19-001, Search Warrant
Application at PageID.23 (Affidavit at 22), ¶ 46.d. Page 22,
lines 1 to 7 discuss the January 11, 2017 meeting and the period
when Pang and the others were outside in the hallway while Leong
and Okimoto spoke alone. [Id., ¶ 46.c.] However, it does not
discuss the substance of either the meeting or the hallway
conversation, except for the general statement that the meeting
occurred "while Kealoha's separation agreement was being
negotiated." [Id.] This Court therefore concludes that
paragraph 46.c is not protected by the City's attorney-client
privilege.

    Page 22, line 19 to page 23, line 6 sets forth Pang's
opinions on various issues, including: the Police Commission's
authority over hiring and firing; the Police Commission's
authority over separation payments; the Corporation Counsel's
past practices regarding payments associated with litigation, as
opposed to a separation agreement; and whether the use of a
provisional account to fund Kealoha's separation agreement was

---

[8] Paragraphs 46.c to e are part of a summary of statements
that Pang made when FBI agents interviewed Pang on February 6,
2018 at his residence. See MJ 19-001, Search Warrant Application
at PageID.22-24 (Affidavit at 21-23), ¶¶ 46-46.e.

appropriate. See MJ 19-001, Search Warrant Application at PageID.23-24 (Affidavit at 22-23), ¶ 46.e. Pang stated these opinions during an interview by FBI agents, not during a communication with a client. Further, paragraph 46.e does not indicate that Pang formed these opinions in the course of a communication that was protected by the attorney-client privilege. This Court therefore concludes that paragraph 46.e is not protected by the City's attorney-client privilege.

Page 26, lines 11 to 12 and page 27, lines 11 to 12 discuss conversations that Sword had with Leong regarding Kealoha's separation. See MJ 19-001, Search Warrant Application at PageID.27-28 (Affidavit at 26-27), ¶¶ 48.b, 48.e.[9] Leong and Sword were acting in their capacities as City officials, and the communication was related to legal advice sought by the City. Further, the communications appear to have been made in confidence, and there is no indication that the City waived the privilege. This Court therefore concludes that those passages are protected by the City's attorney-client privilege.

Page 28, line 6 to page 29, line 14 describes a legal opinion that Pang gave Koyanagi, as well as the series of email

---

[9] Paragraphs 48.b and 48.e are part of a summary of statements that Sword made when FBI agents and federal prosecutors interviewed him on April 9, 2018. See MJ 19-001, Search Warrant Application at PageID.27-28 (Affidavit at 26-27), ¶¶ 48-48.g.

communications in which the advice was given. See id. at
PageID.29-30 (Affidavit at 28-29), ¶¶ 49.b-49.b.iii.[10] According
to the Affidavit, the emails were between Koyanagi, Leong, Pang,
and another deputy corporation counsel. They were all acting in
their capacities as City officials, and the communication was
related to legal advice sought by the City. Further, the
communications appear to have been made in confidence, and there
is no indication that the City waived the privilege. This Court
therefore concludes that paragraphs 49.b, 49.b.i, 49.b.ii, and
49.b.iii are protected by the City's attorney-client privilege.

Page 31, line 6 to page 32, line 2 summarizes a series
of email messages that Leong and Koyanagi exchanged to prepare a
press release regarding the funding of the Kealoha separation
payment. See MJ 19-001, Search Warrant Application at PageID.32-
33 (Affidavit at 31-32), ¶¶ 49.h.i-49.h.iii. Leong and Koyanagi
were both acting in their capacities as City officials, and the
communication was related to legal advice sought by the City.
Further, the communications appear to have been made in
confidence, and there is no indication that the City waived the
privilege. This Court therefore concludes that paragraphs

---

[10] Paragraphs 49.b to b.iii are part of a summary of
statements that Koyanagi made when FBI agents and federal
prosecutors interviewed him on October 3, 2018. See MJ 19-001,
Search Warrant Application at PageID.28-33 (Affidavit at 27-32),
¶¶ 49-49.h.iii, and unnumbered following paragraph.

49.h.i, 49.h.ii, and 4h.b.iii are protected by the City's attorney-client privilege.

### C.   <u>CV 17-107</u>

The following filings remain sealed CV 17-107 – docket numbers 1, 5, 12, 12-1,[11] 18 to 22, 25, 26, 28, and 29. The City does not assert any privilege as to docket numbers 5, 18, 21, 25, nor 28. <u>See</u> City 2/22/23 Letter at PageID.1859-65 (City Privilege Log at 8-14). Those filings must therefore be unsealed.

#### 1.   <u>Docket Number 1</u>

CV 17-107, docket number 1 is the Government's Appeal and Request to District Court to Reconsider a Pretrial Matter Determined by the Magistrate Judge, filed on March 7, 2017 ("CV 17-107 Appeal"). The City first asserts attorney-client privilege as to page 13, lines 18-19, and page 14, lines 3-4. The reference to page 13, lines 18-19 appears to be a mistaken reference to lines 19-20. Both passages discuss the substance of the conversation that Pang and Axt had in the hallway during the January 11, 2017 meeting. <u>See</u> City 2/22/23 Letter at PageID.1859 (City Privilege Log at 8). This Court has ruled that the hallway

---

[11] Docket numbers 12-2 to 12-37 were unsealed in the 2/8/23 EO. [2/8/23 EO at PageID.1812.] For purposes of the Renewed Motion, this Court accepts the City's representation that the failure to assert the attorney-client privilege as to those filings was inadvertent, and this Court will assess whether they are privileged. <u>See</u> <i>supra</i> Discussion § I.

conversation is protected by the City's attorney-client privilege. See *supra* Discussion § III.A.3. Page 13, lines 19-20 and page 14, lines 3-4 are therefore protected by the City's attorney-client privilege.

The City next asserts attorney-client privilege as to page 20, line 15 to page 21, line 2. See City 2/22/23 Letter at PageID.1859 (City Privilege Log at 8). Although not specifically identified in this passage, the information contained in the passage appears to have been taken from the conversation between Leong, Koyanagi, Sword, and Okimoto, the transcription of which is Exhibit 3 to MJ 17-075 Ex Parte Motion. Similarly, the City asserts attorney-client privilege as to page 22, lines 11-12, see id., which appears to refer to the conversations that are transcribed in Exhibits 1, 3, and 4 to MJ 17-075 Ex Parte Motion. This Court has ruled that those exhibits are protected by the City's attorney-client privilege. See *supra* Discussion § III.A.1. Page 20, line 15 to page 21, line 2 and page 22, lines 11-12 are therefore protected by the City's attorney-client privilege.

## 2. **Docket number 12**

Docket number 12 is the Government's Zolin Step 1 Brief.

### a.   **Memorandum in Support**

The City asserts attorney-client privilege as to page 7, line 13 through page 9, line 2 and page 9, lines 11-15 of the memorandum in support of the Zolin Step 1 Brief. See City 2/22/23 Letter at PageID.1859 (City Privilege Log at 8). These passages include footnotes that contain statements of fact and legal arguments that are not subject to the attorney-client privilege and must be unsealed. See CV 17-107, Zolin Step 1 Brief, Mem. in Supp. at 8-9 nn.9-12. The text in the body of that passage, however, discusses the January 11, 2017 meeting and hallway conversation, as well as the conversation that is transcribed in Exhibit 1 to MJ 17-075 Ex Parte Motion. Because this Court has ruled that the meeting and those conversations are protected by the City's attorney-client privilege, the text in the body of that passage is also protected. Similarly, the City asserts attorney-client privilege as to page 12, line 6 to page 13, line 1, which discusses the conversations that are transcribed in Exhibits 3 and 4 to MJ 17-075 Ex Parte Motion. See City 2/22/23 Letter at PageID.1860 (City Privilege Log at 9). Those conversations are protected by the City's attorney-client privilege, and therefore that passage is also protected.

The City asserts attorney-client privilege as to: page 1, lines 19-20; page 19, line 16 to page 20, line 1; page 21, lines 5-7; page 41, lines 1-5; and page 41, lines 1-5.

See City 2/22/23 Letter at PageID.1859-60 (City Privilege Log at 8-9). All of those passages contain general argument describing what the Government believed was suggested by the evidence obtained to that point; the passages do not refer to any specific attorney-client communication.[12] Those passages therefore are not privileged and must be unsealed.

### b.   __Exhibits__

The Zolin Step 1 Brief has 36 exhibits. The Government redacted some of the exhibits that it believed may have contained privileged material. See CV 17-107, Zolin Step 1 Brief, Mem. in Supp. at 2. Unredacted versions of those exhibits were filed with the Zolin Step 2 Brief (Exhibits 10-U, 13-U, 14-U, 15-U, 18-U, 19-U, 20-U, 25-U, 26-U, 29-U, and 33-U), and the City has asserted attorney-client privilege as to those exhibits.

All of the Zolin Step 1 Brief's exhibits were incorporated by reference in the Memorandum in Support of the Zolin Step 2 Brief. See, e.g., CV 17-107, Zolin Step 2 Brief, Mem. in Supp. at 6 & n.1. The City has not asserted attorney-client privilege as to the Zolin Step 1 Brief exhibits that do not have a corresponding unredacted version in the Zolin Step 2

---

[12] At the time of the proceedings in CV 17-107, there may have been other applicable reasons to seal the Government's argument, but only the City's attorney-client privilege remains at issue before this Court.

Brief. Further, the City could not do so because those exhibits include publicly available documents such as a criminal indictment, a civil complaint, and news articles. See, e.g., CV 17-107, Zolin Step 1 Brief, Exhs. 1, 5, 9. Therefore the following exhibits to the Zolin Step 1 Brief shall remain unsealed: Exhibits 1-9, 11, 12, 16, 17, 21-24, 27, 28, 30-32, and 34-36.

### 3.   **Docket Number 19**

CV 17-107, docket number 19 is Judge Watson's June 14, 2017 Order Reversing in Part the Magistrate Judge's February 22, 2017 Order ("Zolin Step 1 Order"). The City first asserts attorney-client privilege as to page 4, line 7 through page 5, line 5. See City 2/22/23 Letter at PageID.1860 (City Privilege Log at 9). That passage is protected because it discusses the January 11, 2017 meeting and hallway conversation, as well as emails between Leong and participants in the meeting that discuss the substance of the meeting.

The City also asserts attorney-client privilege as to page 7, line 12 through page 8, line 6. See id. That passage is privileged because it discusses the conversations that are transcribed in Exhibits 3 and 4 to MJ 17-075 Ex Parte Motion.

The City asserts attorney-client privilege as to page 22, lines 8-11. See City 2/22/23 Letter at PageID.1860 (City Privilege Log at 9). That passage is not privileged

because it is a quote from the Government's <u>Zolin</u> Step 1 Brief, and this Court has ruled that the passage of the brief is not privileged. <u>See</u> *supra* Discussion § III.C.2.a.

The City asserts attorney-client privilege as to page 23, lines 1-4. <u>See</u> City 2/22/23 Letter at PageID.1861 (City Privilege Log at 10). That passage is not privileged because it is a general discussion of what the Government believed was suggested by the evidence obtained to that point.

Finally, the City asserts attorney-client privilege as to page 32, lines 11-14. <u>See</u> City 2/22/23 Letter at PageID.1862 (City Privilege Log at 11). This passage is not privileged because it is Judge Watson's ruling that the nonprivileged evidence submitted by the Government supports the Government's theory.

### 4.  **Docket Number 20**

CV 17-107, docket number 20 is the Government's Supplement to Amended Appeal and Motion for Determination of Applicability of Attorney-Client Privilege ("<u>Zolin</u> Step 2 Brief").

### a.  **Memorandum in Support**

The City first asserts attorney-client privilege as to page 6, line 4 through page 8, line 7 of the memorandum in support of the <u>Zolin</u> Step 2 Brief. <u>See</u> City 2/22/23 Letter at PageID.1861 (City Privilege Log at 10). That passage is

33

protected by the City's attorney-client privilege because it summarizes the January 11, 2017 meeting and hallway conversation, and a communication to arrange the meeting that refers to the substance of the meeting.

The City next asserts attorney-client privilege as to: page 8, line 12 and page 8, line 15 through page 10, line 5, which summarizes the conversation that is transcribed in Exhibit 1 to the MJ 17-075 Ex Parte Motion; and page 11, line 6 through page 13, line 16, which summarizes the conversations transcribed in Exhibits 3 and 4 the MJ 17-075 Ex Parte Motion. See City 2/22/23 Letter at PageID.1861-62 (City Privilege Log at 10-11). Because this Court has ruled that those conversations are protected by the City's attorney-client privilege, those passages in the Zolin Step 2 Brief are also protected.

The Government's arguments discussing the specific content of the protected conversations that were summarized earlier in the brief – page 20, line 10 through page 21, line 1 and page 25, lines 2 to 3 - are also protected. See id. at PageID.1861 (City Privilege Log at 10) (asserting the attorney-client privilege as to those passages). In contrast, the passage from page 3, line 8 to line 12, the passage from page 26, line 9 to line 12, and the text in page 29, line 9 are not protected because they are statements of the Government's general theory of the evidence and do not discuss any specific attorney-client

34

communication. See id. at PageID.1861-63 (City Privilege Log at 10-12) (asserting the attorney-client privilege as to those passages).

The City also asserts attorney-client privilege as to page 27, line 2 through page 28, line 10. See id. at PageID.1862-63 (City Privilege Log at 11-12). Page 27, line 5 through the end of the cited passage summarizes the content of January 11, 2017 meeting and hallway conversation and the conversations that are transcribed in Exhibits 1, 3, and 4 to the MJ 17-075 Ex Parte Motion. That portion of the passage is therefore privileged. The portion from page 27, lines 2 to 4 discusses another conversation between Leong and Sword on January 10, 2017. Although there is limited information about that conversation, based on the context that the passage appears in, together with the information in the City Privilege Log, this Court also finds that the January 10, 2017 conversation is protected by the City's attorney-client privilege. Therefore, the passage from page 27, line 2 to line 4 is also privileged.

### b.   **Exhibits**

Exhibit 10-U is an FBI report, dated February 9, 2017, regarding a January 20, 2017 interview of Axt and an HPD accountant. The City first asserts attorney-client privilege as to page 1, line 5. See City 2/22/23 Letter at PageID.1863 (City Privilege Log at 12). This Court finds that the text does not

contain any information that is protected by the City's attorney-client privilege. Because page 2, line 11-30 of Exhibit 10-U discusses the January 11, 2017 meeting and the hallway conversation, that passage is protected by the City's attorney-client privilege. Similarly, because page 4, lines 20-25 discusses the conversation that is transcribed in Exhibit 1 to the MJ 17-075 Ex Parte Motion, that passage is protected by the City's attorney-client privilege. See id. (asserting the privilege as to those passages).

Exhibit 13-U is an FBI report, dated January 25, 2017, regarding a January 13, 2017 interview of Axt. The City asserts attorney-client privilege as to page 1, lines 9-32. See id. at PageID.1863 (City Privilege Log at 12). Although the passage refers to the meeting as occurring on January 12, 2017, that appears to be an error and the passage discusses the substance of the January 11, 2017 meeting. That passage is therefore protected by the City's attorney-client privilege. Similarly, the text on page 2, line 10, line 12, lines 15 to 18, and lines 25 to 26 also discuss the substance of the January 11, 2017 meeting, and therefore the text is also protected by the City's attorney-client privilege. See id. (asserting the privilege as to those lines).

Exhibit 14-U is an FBI report, dated February 3, 2017, regarding contact with Inouye on January 12, 2017 and the

provision of a disc containing the conversations recorded by
Okimoto. The City asserts attorney-client privilege as to
lines 16-17 of the one-page document. See id. This Court finds
that the passage does not contain any information that is
protected by the City's attorney-client privilege.

Exhibits 15-U, 19-U, and 20-U are the FBI
transcription that are Exhibits 1, 3, and 4 to the MJ 17-075 Ex
Parte Motion. Those exhibits are protected by the City's
attorney-client privilege.

The City also asserts attorney-client privilege as to
page 4, lines 23-24 and page 5, lines 25-27 in Exhibit 29-U. See
id. Exhibit 29-U is an FBI report, dated April 13, 2017,
regarding a February 3, 2017 interview of Okimoto, Inouye, Axt,
and Uyema. Those passages refer to, respectively, a telephone
call between Okimoto and Leong and a conversation between Pang,
Axt, Inouye, and Uyema, both of which addressed details
regarding the Kealoha separation payment. Although there is
limited information about those conversations, based on the
context that the passages appear in, together with the
information in the City Privilege Log, this Court also finds
that those conversations are protected by the City's attorney-
client privilege. Therefore, the passages in Exhibit 29-U,
page 4, lines 23-24 and page 5, lines 25-27 are also privileged.

The City has not asserted attorney-client privilege as to Exhibits 25-U, 26-U, 33-U, nor 37-46. Those exhibits must therefore be unsealed.

Where this Court has sustained the City's assertion of the attorney-client privilege as to the Zolin Step 2 Brief's unredacted exhibits, or portions thereof, the corresponding exhibits, or portions thereof, to the Zolin Step 1 Brief are also protected by the City's attorney-client privilege.

### 5.   **Docket Number 22**

CV 17-107, docket number 22 is Judge Watson's August 4, 2017 Crime-Fraud Order. The City first asserts attorney-client privilege as to page 4, line 8 through page 5, line 18. See City 2/22/23 Letter at PageID.1864 (City Privilege Log at 13). That passage is protected by the City's attorney-client privilege because it summarizes the January 11, 2017 meeting and hallway conversation, and a communication to arrange the meeting that refers to the substance of the meeting.

The City next asserts attorney-client privilege as to page 6, lines 1-2 and page 6, line five to page 8, line 32. See id. That passage is protected by the City's attorney-client privilege because it discusses and quotes the conversation that is transcribed in Exhibit 1 MJ 17-075 Ex Parte Motion, i.e. Exhibit 15-U to the Zolin Step 2 Brief. Similarly, page 11, line 5 to page 12, line 18 and page 37, line 2 to page 38,

line 3 are protected because they discuss and quote the conversation that is transcribed in Exhibit 3 to the MJ 17-075 Ex Parte Motion, *i.e.* Exhibit 19-U to the Zolin Step 2 Brief. See id. at PageID.1864-65 (City Privilege Log at 13-14) (asserting attorney-client privilege as to those passages). The passage from page 12, line 23 to page 13, line 11 is also protected because it discusses and quotes the conversation that is transcribed in Exhibit 4 to the MJ 17-075 Ex Parte Motion, *i.e.* Exhibit 20-U to the Zolin Step 2 Brief. See id. at PageID.1864 (City Privilege Log at 13) (asserting attorney-client privilege as to those passages).

The passage from page 34, line 4 to line 7 is protected by the City's attorney-client privilege because it discusses a protected portion of Exhibit 10-U to the Zolin Step 2 Brief, and the passage from page 34, line 18 to page 35, line 2 is protected because it discusses a protected portion of Exhibit 13-U to the Zolin Step 2 Brief. See id.

However, the passage that is page 36, line 6 to line 10 is not protected because it states the Government's general theory of the evidence and does not discuss any specific attorney-client communication. See id. Further, the passage discusses unprivileged portions of Exhibits 10-U and 13-U, as well as Exhibit 12 to the Zolin Step 1 Brief, which is not privileged.

39

### 6.   **Docket Number 26**

CV 17-107, docket number 26 is the Government's Supplement in Support of Motion for Order Partially Unsealing Court's August 4, 2017 Order Concerning Applicability of Attorney-Client Privilege and Crime-Fraud Exception. The City asserts attorney-client privilege as to page 4, lines 15-22. See City 2/22/23 Letter at PageID.1860 (City Privilege Log at 9). That passage is protected by the City's attorney-client privilege because it summarizes the January 11, 2017 meeting and hallway conversation, and a communication to arrange the meeting that refers to the substance of the meeting.

### 7.   **Docket Number 29**

CV 17-107, docket number 29 is the Government's Motion for Order Partially Unsealing Court's August 4, 2017 Order Concerning Applicability of Attorney-Client Privilege and Crime-Fraud Exception. The City asserts attorney-client privilege as to page 3, lines 16-24. See City 2/22/23 Letter at PageID.1865 (City Privilege Log at 14). That passage is protected by the City's attorney-client privilege because it summarizes the January 11, 2017 meeting and hallway conversation.

### D.   **Crime-Fraud Exception**

This Court has concluded that, as a matter of law, "because the Kealoha Agreement required a transfer within HPD budget activities, the City Council, as keeper of the City's

purse, had to approve the settlement of claims in the Kealoha
Agreement." [Order Denying Defendant Donna Yuk Lan Leong's
Motion to Dismiss for Tenth Amendment and Due Process Violations
and Denying the Joinders in the Motion, filed 8/28/23 (dkt.
no. 331) ("8/28/23 Order"), at 30-31.] Thus, the Commission's
approval and payment of $250,000 pursuant to the Kealoha
Agreement violated the applicable provisions of the Revised
Charter of the City and County of Honolulu ("City Charter"),
Revised Ordinances of Honolulu ("ROH") Sections 2-3.1 and 2-3.4,
and Harris v. DeSoto, 80 Hawai`i 425, 911 P.2d 60 (1996). See
8/28/23 Order at 31-32. This Court noted that the issue of
whether Defendants acted intentionally or negligent or otherwise
is reserved for the jury to determine. See id. at 32-33. In
other words, although the payment violated state and county law,
whether Defendants violated Title 18 United States Code
Sections 371, 666(a)(1)(A), and 1343 will depend upon whether
the requisite intent can be established beyond a reasonable
doubt.

        This Court finds, by a preponderance of the evidence,
that the material identified *supra* which is protected by the
City's attorney-client privilege constitutes communications, or
descriptions of communications, that are sufficiently related
to, or were made in furtherance of the violation of the
applicable provisions of the City Charter, the ROH, and Harris.

41

At the time of the communications at issue in the Renewed Motion, the violation was either intended or ongoing. See In re Napster, 479 F.3d at 1090, 1094-95. This Court therefore concludes that the crime-fraud exception applies to the communications cited above that would otherwise have been protected by the City's attorney-client privilege.

Because the crime-fraud exception applies, all of the filings described above must be unsealed, except for the redactions that this Court previously approved based on privacy interests. See 2/8/23 EO at PageID.1812-13.

## IV.  **Redaction Issues**

The Renewed Motion also argues the City failed to comply with the 2/8/23 EO when it implemented the privacy redactions. See Renewed Motion at 3. The City acknowledges some instances of noncompliance, but argues they were inadvertent and non-substantive. This Court therefore DIRECTS the parties to meet and confer to identify the redactions that need to be redone, as opposed to any noncompliance that is harmless. The parties are DIRECTED to meet and confer by **January 9, 2024**.

The parties are directed to file, by **January 11, 2024**, a joint statement identifying the sealed documents in MJ 17-075, MJ 19-001, and CV 17-107 that: 1) do not require any redaction; 2) have already been redacted and do not require further redactions; 3) the parties agree require revision of the City's

42

redactions in order to comply with the 2/8/23 EO; and 4) the parties cannot agree regarding whether revisions of the City's redactions are required. The joint statement must include a representation by the City regarding the amount of time it requires to revise the redactions in the category 3 documents.

As to the documents in category 2, the City is DIRECTED to produce the redacted versions of the documents by **January 12, 2024.** The documents in category 1 will be unsealed, and the redacted documents in category 2 will be filed, on **January 16, 2024.** This Court will issue an order addressing the documents in categories in 3 and 4.

### CONCLUSION

For the foregoing reasons, Civil Beat's Renewed Motion to Unseal Court Records, filed October 10, 2023, is HEREBY GRANTED in its entirety. The sealed documents in MJ 17-075, MJ 19-001, and CV 17-107 shall be unsealed, subject to the approved redactions to protect privacy interests.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 22, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge